8    *Thompson, et al. v. Williamson County, TN., et al.*                    No. 99-5458

participating in high school sports due to school's age requirement, not because of their learning disability).

Although some of the facts have been disputed in this case, it is clear that the Thompsons have failed to present either a genuine issue of a material fact as to their ADA and Rehabilitation Act claim, or evidence that their son was denied a public service because of his disability. Therefore, the district court did not err in granting summary judgment in favor of defendants.

**AFFIRMED.**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0233P (6th Cir.)
File Name: 00a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHARLES H. THOMPSON, SR.,
Individually and as
Administrator for the Estate
of CHARLES H. THOMPSON,
JR., Deceased; ODESSA L.
THOMPSON, Individually and
as Next Friend of CHARLES
H. THOMPSON, JR.,
     *Plaintiffs-Appellants,*

    *v.*

WILLIAMSON COUNTY,
TENNESSEE; KENNETH G.
GOODING, Individually and in
his official capacity as
Deputy Sheriff of Williamson
County, Tennessee,
     *Defendants-Appellees.*

No. 99-5458

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 96-00263—Todd J. Campbell, District Judge.

Argued: March 7, 2000

Decided and Filed:  July 17, 2000

Before:  SILER and GILMAN, Circuit Judges;
O'MALLEY, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Jeffery S. Frensley, Nashville, Tennessee, for Appellants. Lisa Carson, BUERGER, MOSELEY, CARSON & BYRD, Franklin, Tennessee, for Appellees. **ON BRIEF:** Jeffery S. Frensley, Charles R. Ray, Nashville, Tennessee, for Appellants. Lisa Carson, BUERGER, MOSELEY, CARSON & BYRD, Franklin, Tennessee, for Appellees.

_____

**OPINION**

_____

   SILER, Circuit Judge.  Plaintiffs, Charles Thompson, Sr., individually and as the administrator of the estate of his son, Charles Thompson, Jr., and his wife, Odessa Thompson, appeal the district court's grant of summary judgment in favor of defendants, Williamson County, Tennessee, and Williamson County Deputy Sheriff Kenneth G. Gooding, in this suit alleging that the defendants discriminated against their mentally disabled son by denying him access to medical services in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. 701, et seq. ("Rehabilitation Act").  For the reasons stated herein, we AFFIRM.

_____

   [*]  The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

was, that such denial was ***because of his disability.***[5]  *See Bonds*, 20 F.3d at 701 (when reviewing summary judgment, court may only consider pleadings, evidence, and affidavits submitted prior to plaintiff's motion to alter or amend judgment); *Ogletree v. McNamara*, 449 F.2d 93, 99 (6th Cir. 1971)(facts not alleged in amended complaint upon which summary judgment granted are not properly before court). The record indicates that when the Thompsons called 911, they requested and received police assistance.  Although they wanted their son taken to a medical facility, it would have still been necessary for Gooding to disarm the decedent before he could be transported anywhere.  Gooding's failure to disarm, or take the decedent under control, was not because he was inadequately trained to deal with disabled individuals, but because the decedent threatened him with a deadly weapon before he could subdue him.  Thus, if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled. *Cf. Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026 (6th Cir. 1995) (plaintiffs prevented from

_____

   [5]The Thompsons' main argument centers on the fact that at the time of their son's death, the Williamson County Sheriff did not have a formal policy on how to deal with mentally disabled individuals.  The Thompsons submit that Gooding was inadequately trained on how to deal with mentally disabled individuals, which precluded the decedent from being handled and transported to a health care facility in a safe and appropriate manner consistent with his disability.

   Williamson County acknowledges that it does not have a formal policy on dealing with disabled individuals because each individual and each disability is different.  Therefore, each situation involving a disabled individual must be assessed by its officers on a case-by-case basis.  Also, evidence was offered at trial that all officers receive training in recognizing and handling disabled individuals at the Law Enforcement Training Academy.  It was further shown that Gooding participated in a Field Training Officer Program where he was teamed up with an experienced officer in the field and answered calls involving disabled individuals.  Gooding had also been instructed on the Williamson County's deadly force policy, which allows an officer to use deadly force if he believes his or another individual's life is in danger.

## I. BACKGROUND

This case stems from the death of Charles Thompson, Jr.,[1] who was shot and killed by Gooding during a confrontation in which the decedent threatened Gooding with a machete. In 1995, the decedent's brother, Robin Thompson, called 911 requesting police assistance because his brother, who was "kinda mentally handicapped," had "just flipped his wig" and was in the house threatening their father with a machete. Gooding and Sergeant Paul Brady were dispatched to the scene. Upon their arrival, the officers were informed that the decedent was no longer in the house, but had disappeared into the woods behind the Thompsons' home. Mrs. Thompson told Gooding that the decedent was "mental" and had the "mind of a child." According to the Thompsons, they did not wish for Gooding to arrest their son, but only wanted him to be transported to a hospital so he could receive medical attention. The officers were unable to locate the decedent and left after telling the Thompsons they would return if needed.

Shortly thereafter, Robin Thompson called 911 again and informed the dispatcher that his brother had returned to their house and was armed with two machetes. Mrs. Thompson also told the dispatcher they needed immediate assistance and that she would be willing to sign an arrest warrant. Gooding returned to the Thompsons' residence and, knowing that the decedent was outdoors and armed, he took his shotgun and proceeded toward the house. Robin Thompson told Gooding that his brother was behind the house, at which point Gooding attempted to peer around the side of the house without being seen. However, the decedent spotted him and began to come toward him with the two machetes. After identifying himself and ordering the decedent to drop his weapons, Gooding claims that the decedent raised one of the machetes as if to throw it at him, whereupon he shot and killed the decedent.

---

[1] At the time of his death, the decedent was forty years old and living with his parents. He had been mentally disabled since the age of fourteen after he went into a coma during a failed suicide attempt.

---

the participation in programs or activities provided by a public entity." 42 U.S.C. §12131(2).[4]

Here, the Thompsons submit that the district court erred in granting summary judgment in favor of defendants because the decedent was a "qualified individual with a disability" who was denied emergency medical services "because of his disability." However, when defendants moved for summary judgment, almost a year after the Thompsons filed their complaint, the Thompsons failed to provide any evidence to the district court that their son was disabled within the meaning of the ADA, that he was an otherwise qualified individual with a disability, or that he was denied access to public medical services because of his disability. Because they neglected to establish the existence of several essential elements to their claim that they would have had the burden of proving at trial, the district court dismissed Thompsons' ADA and Rehabilitation Act claim. *See Celotex*, 477 U.S. at 322. On appeal, the Thompsons now offer proof that their son was disabled within the meaning of the ADA, and that he was an otherwise qualified disabled individual who was denied medical services because of his disability. Nevertheless, because the defendants did not dispute the fact that the decedent was disabled, we will assume, for purposes of this appeal, that he was disabled.

The Thompsons' claim still fails as a matter of law. Although there is no doubt that their son was disabled under the ADA, the Thompsons have failed to produce any evidence that he was denied either access to a public service, or if he

---

[4] *See also Maddox*, 62 F.3d at 845(to show violation under Rehabilitation Act, plaintiff must prove he is an otherwise qualified handicapped person who is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under a program which is receiving federal funding, solely by reason of his handicap).

The Thompsons sued defendants, alleging that: (1) Gooding unreasonably and unnecessarily used deadly force against decedent pursuant to 42 U.S.C. § 1983; (2) defendants denied their son public emergency medical services pursuant to the ADA and Rehabilitation Act; (3) Gooding caused the wrongful death of their son pursuant to Tennessee's wrongful death statute, T.C.A. § 20-5-101 et seq.; and (4) Gooding committed various common law offenses against their son.[2]

On defendants' motion for summary judgment, the district court found that the Thompsons had failed to produce any medical evidence that their son was a "qualified individual with a disability" under the ADA or Rehabilitation Act. Furthermore, it found that the Thompsons failed to produce any evidence that the decedent was denied any public services because of his disability. Since there was no causal connection between the decedent's disability and the denial of medical services, the district court granted summary judgment in favor of defendants as to the Thompsons' ADA and Rehabilitation Act claim. A jury trial was held on the remaining claims and a verdict was returned in favor of defendants. The Thompsons moved for a new trial, which was denied. The Thompsons filed this appeal, which only challenges the district court's grant of summary judgment in favor of defendants on their ADA and Rehabilitation Act claim.

## II. STANDARD OF REVIEW

An order granting summary judgment is reviewed *de novo*; therefore, we must apply the same test as the district court. *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 672 (6th Cir. 1999). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[2]These claims were for assault and battery, outrageous conduct and negligence.

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence submitted must be viewed in a light most favorable to the non-moving party, *see Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994), and the party seeking summary judgment is responsible for identifying which portion of the record "demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Under the ADA, "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, the Rehabilitation Act provides that, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

An individual is disabled for the purposes of the ADA if the person has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [has] a record of such an impairment; or [is] regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C).[3] To be a "qualified individual with a disability," the person must "with or without reasonable modifications to rules, policies, or practices ... meet the essential eligibility requirements for the receipt of services or

---

[3]Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act, *see* 42 U.S.C. § 12133, claims brought under both statutes may be analyzed together. *Maddox v. University of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995).