**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0089n.06

No. 09-4355

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 10, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| KEVIN EVERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| SIMON LEIS, Hamilton County Sheriff; Deputy | ) | District of Ohio |
| ALBERT WITTICH; JOHN DOE, Sherriff Deputy; | ) | |
| JOHN DOE, Employee of Northgate Mall, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:       BOGGS, MOORE, and SUTTON, Circuit Judges.

BOGGS, Circuit Judge.  Shortly after suffering an epileptic seizure at a mall, Kevin Everson was restrained, placed under arrest, and charged with criminal offenses.  Those charges were ultimately dropped.  In district court, Everson brought claims against defendants under Title II of the Americans with Disabilities Act ("ADA").  Everson alleges that defendants intentionally discriminated against him in the manner they responded to his seizure.  The district court granted summary judgment in favor of defendants, and we affirm.

I

On April 19, 2003, Everson experienced an epileptic seizure in the bathroom at Northgate Mall in Hamilton County, Ohio.  Appellant's Br. at 3.  Shortly thereafter, Hamilton County Deputy Sheriff Albert Wittich received a call requesting assistance for a person at the mall having a seizure.

When Wittich arrived, two EMS employees and two other deputies, responding to the same call, were already at the scene.

Everson remembers that he was approached by individuals in uniform after exiting the bathroom, and that he asked them whether he could sit down. Everson also remembers being on the ground, although he otherwise lacks any recollection of his interaction with these uniformed individuals until after his epsiode ended with him restrained on a cot. *Everson v. Leis*, 556 F.3d 484, 489-90 (6th Cir. 2009). This loss of memory is typical for Everson, who stated that he can remember what happens before and after—but not what happens during—a seizure. *Id*. at 489.

Because Everson has no further memories of the interaction at issue, the defendants' version of events is undisputed and should be accepted for the court's purposes here. *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008) (deciding summary judgment based on officer's version of events when plaintiff, due to disability, could not recall what happened) (citing *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006)). This court summarized defendants' version of events as follows:

> Everson threatened to swing at mall security staff and local EMS. He kicked and swung at individuals as they approached him. When Deputy Wittich attempted to retrieve [Everson's] identification, Everson became violent and kicked the deputy. After being placed on the ground, Everson continued to kick and fight. When an EMS worker tried to obtain a blood sugar reading, Everson pushed the worker away.

*Everson v. Leis*, 556 F.3d at 489–90. The only additional discovery following Everson's first appeal—Deputy Wittich's deposition—confirms these events.

Putting an end to this ruckus, Wittich restrained Everson, placed him on an EMS cot, and transported him outside the mall. Appellees' Br. at 6. Wittich placed Everson under arrest and

subsequently prepared a criminal complaint, charging him with both assault and disorderly conduct under the Ohio Revised Code. Everson claims that he experiences involuntary muscle movements during and after seizures, and that all of his aggressive actions were caused by his seizure. Accordingly, the charges were dismissed when Everson's attorney provided the prosecutor with medical documentation of Everson's disability. Appellant's Br. at 6.

Nearly two years later, on February 11, 2005, Everson filed claims against Sheriff Simon Leis, Wittich, a John Doe Deputy, Northgate Mall, and John Doe employees of the mall. In his complaint, Everson asserted multiple claims under 42 U.S.C. §§ 1983 and 1985, an equal protection claim under the Fourteenth Amendment, an emotional distress claim under Ohio law, and a claim under Title II of the ADA.

On August 1, 2006, Leis and Wittich filed a motion for summary judgment. Everson's counsel did not reply to the motion and ultimately withdrew for personal reasons. Everson's new counsel requested that the district court reopen discovery, and the court granted the request on October 11, 2007. Leis and Wittich filed an interlocutory appeal of the order to reopen discovery, and in *Everson v. Leis*, this court decided that appeal, holding that Leis and Wittich were entitled to qualified immunity on all §§ 1983 and 1985 claims against them in their individual capacities. 556 F.3d at 491–92. Because Leis and Wittich had not moved for qualified immunity from the ADA claim against them in their individual capacities, the court did not reach the merits of the ADA claim and remanded to the district court for further proceedings. *Id*. at 501.

Everson voluntarily dismissed his equal protection and emotional distress claims, choosing to proceed with only his Title II claim against Leis and Wittich in their official capacities. On

October 6, 2009, the district court granted summary judgment to the defendants on Everson's sole remaining claim. The court assumed for purposes of summary judgment that Everson's actions were involuntary and caused by his epilepsy, but nonetheless concluded that any discrimination was unintentional and thus not actionable under the ADA.

Everson filed this timely appeal of the district court's order of summary judgment, and this court has appellate jurisdiction under 28 U.S.C. § 1291.

II

This court reviews orders granting summary judgment de novo. *Havensure, L.L.C. v. Prudential Ins. Co. of America*, 595 F.3d 312, 315 (6th Cir. 2010). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Havensure*, 595 F.3d at 315 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of establishing a lack of a genuine issue of material fact, and if the moving party meets this burden, the nonmoving party must set forth specific facts indicating the existence of a genuine issue. *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 522 (6th Cir. 2008).

Finally, when reviewing the record for a genuine issue of material fact, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Richland Bookmart,*

No. 09-4355
*Everson v. Simon Leis, et al.*

*Inc. v. Knox Cnty., Tenn.*, 555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986)).

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim of discrimination under Title II, a plaintiff must prove that: "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely[1] because of her disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003)). The plaintiff must also prove that the disability discrimination was intentional as it relates to the service, activity, or program. *Tucker v. Tennessee*, 539 F.3d 526, 535 (6th Cir. 2008) ("[E]ach [plaintiff] must show that he or she was *intentionally* discriminated against *solely because of his or her disability* in the context of that public service, activity, or program . . . .").

Defendants argue that Title II does not apply to arrests. Appellees' Br. at 8. While whether Title II applies to arrests is an open question in this Circuit, we need not decide it here. *Tucker*, 539 F.3d at 534–35 (noting the open question and assuming, without deciding, the applicability of Title II to arrests in disposing of the case for a lack of intentional discrimination); *Scozzari v. City of Clare*, 723 F. Supp. 2d 945, 971 (E.D. Mich. 2010) (noting that the Sixth Circuit has not decided

_____

[1]Although "solely" is part of this circuit's test for disability discrimination, we do not believe that it does any work in this case.

- 5 -

whether Title II applies to arrests). Because we hold that Everson fails to establish a genuine issue of material fact as to whether defendants intentionally discriminated against him because of his disability, we affirm the grant of summary judgment in favor of defendants without deciding whether Title II applies to arrests. *Tucker*, 539 F.3d at 534-35; *Shultz v. Carlisle Police Dep't*, 706 F. Supp. 2d 613, 626 (M.D. Pa. 2010) (noting the lack of Third Circuit guidance on the same issue and disposing of an ADA claim for a lack of intent).

III

Because we must draw all inferences in the light most favorable to Everson, the nonmoving party, we consider the following facts and inferences for the purpose of determining whether, as the district court found below, there is "no genuine issue as to any material fact and [defendants are] entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Richland Bookmart*, 555 F.3d at 520.

Everson has epilepsy, and his epilepsy caused all of his behavior during his interaction with defendants.

From the call that dispatched him to the scene, Wittich knew that Everson had recently suffered a seizure and had been unconscious. And at the time Wittich entered the scene, Wittich knew that Everson was acting in a semi-conscious state of mind. *Everson v. Leis*, 556 F.3d at 499 ("It is a fair inference, then, that the deputy should have known that Everson's actions were made with, at best, a semi-conscious frame of mind.").

When Wittich arrived at the scene, Everson threatened to "have another seizure and start punching you guys," which in the best light for Everson, put Wittich on notice that Everson was

prone to having another seizure. Appellant's Br. at 5. Everson also acknowledges that he kicked Wittich, albeit involuntarily. Everson otherwise has no recollection of the disputed interaction in the mall, and he accordingly does not dispute the descriptions of the interaction offered in the affidavits of those at the scene, which should be accepted for purposes of determining whether summary judgment is appropriate. *Wysong*, 260 F. App'x at 856.

Brandon Goff, a mall security guard, averred that Everson was "threatening to swing at uniform officers and the [EMS]" and that Everson "kicked the uniform officers and attempted to swing at another uniform officer," continuing to "kick and fight" after being taken to the ground. Kellie Murphy, an EMS employee, averred that Everson "kicked and swung at the uniform officers and pushed me away when I attempted to get a blood sugar reading" and that Everson "continued to kick, fight and attempt to spit on us" after being taken to the ground. And Wittich similarly averred that Everson was "violent and started kicking" and "continued to kick and fight" after being taken to the ground.

Wittich testified that, when he first arrived at the scene, he asked an EMS paramedic whether Everson's behavior was "all part of his medical condition[,]" and that the paramedic responded, "[n]o, he's just acting like a fucking asshole." The district court did not consider this testimony in its summary judgment analysis. Everson characterizes the testimony as hearsay, but the district did not use that term, and appropriately so, as the statement was not hearsay to the extent that it is used to demonstrate Wittich's state of mind as opposed to the truth of the matter asserted therein, i.e., that Everson was acting purposefully. Fed. R. Evid. 801(c); *Hagan v. Warner/Elektra/Atlantic Corp.*, 92 F. App'x 264, 267–68 (6th Cir. 2004) (holding that, in granting summary judgment for defendant

employer in a discrimination suit, the district court properly considered defendant's testimony

regarding statements made by other employees for the purpose of determining whether the employer

had discriminatory intent) (citing *United States v. Horton*, 847 F.2d 313, 324 (6th Cir. 1988)).

Although the district court opted not to consider the statement for its impact on Everson's state of

mind, we may do so in deciding the issue de novo. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294,

306–07 (6th Cir. 2008) (reversing order for summary judgment based on evidence in record that the

district court did not consider); *see Jibson v. Mich. Educ. Ass'n-NEA*, 30 F.3d 723, 729 (6th Cir.

1994) (holding that this court reviews a district court's grant of summary judgment based on "a *de

novo* review of the evidence in the entire record.").

After restraining and removing Everson from the mall, Wittich had time to consider whether

probable cause existed to charge Everson with a crime, and when he made that determination,

Everson was no longer abusive. *Everson*, 556 F.3d at 499 ("Viewed in the light best to Everson,

he had recovered from his seizure when he arrived at the squad car . . . . There is nothing in the

record to suggest that he was . . . abusive at that time.").

Everson also heard an officer, whom he does not identify as Wittich, suggest that he did not

know what crime Everson had committed. Specifically, Everson claims that, after an unidentified

individual asked the unidentified officer what Everson was going to be charged with, the officer

replied, "I'll think something up and fax it down."

Finally, Wittich received no training on accommodating people with epilepsy.

IV

We apply the three-step test described in *Dillery* and *Tucker* to determine whether the district court erred in granting summary judgment for Wittich. *Tucker*, 539 F.3d at 532 ("to establish a prima facie case of discrimination under the ADA, a plaintiff must prove" the *Dillery* elements). Thus, in order to defeat a motion for summary judgment in his Title II claim against Wittich, Everson must prove that: (1) he has a disability; (2) he otherwise qualifies for the service, program, or activity; and (3) Wittich intentionally discriminated against him solely because of his disability. *Dillery*, 398 F.3d at 567; *Tucker*, 539 F.3d at 535.

First, Everson has alleged facts that indicate that he has a disability. Second, we assume, without deciding, that Everson also qualifies for the service, program, or activity; i.e., that Title II applies to arrests. The remaining question is whether Wittich intentionally discriminated against Everson because of his disability. Everson alleges that Wittich discriminated against him, in violation of Title II, by: (1) restraining him, (2) arresting him, and (3) charging him with assault and disorderly conduct. We consider each of these claims in turn.

A

Everson fails to sufficiently support his claim that Wittich intentionally discriminated against him based on his disability by approaching and restraining him.

In *Tucker*, this court ruled that "[w]here . . . officers are presented with exigent or unexpected circumstances, it would be unreasonable to require certain accommodations be made in light of the overriding public safety concerns . . . we rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter." 539 F.3d at 536. And in *Dillery*, this

court held that, when police officers properly discharged their duties to maintain the safety of others, their stopping a disabled woman for conduct related to her disability did not constitute intentional discrimination. 398 F.3d at 568.

When Wittich arrived on the scene, Everson presented a threat to those around him. *Everson v. Leis*, 556 F.3d at 489–90. Everson does not contest that Wittich was called to assist a person who was having a seizure. Nor does Everson contest that he was threatening security and medical professionals on the scene. Wittich was expected to respond to this situation by securing the scene, which he did by restraining Everson. *See Tucker*, 539 F.3d at 535; *see also Dillery*, 398 F.3d at 568. Everson alleges no facts that reasonably suggest that Wittich, in acting to protect himself and others, acted to discriminate against Everson's disability. Everson argues that Wittich violated an Ohio statute by reaching for his wallet, but Wittich's alleged violation of a state law—which does not relate to *intentional* discrimination—does not speak to the issue of whether he intentionally discriminated against Everson. *See* OHIO REV. CODE § 2305.43 ("[A] law enforcement officer may not search for an . . . identification card in a manner . . . that would appear to a reasonable person in the circumstances to cause an unreasonable risk of worsening the disabled person's condition.").

In a similar case in this circuit, police were contacted to assist with a mentally disabled individual who was threatening his family with a machete. *Thompson v. Williamson Cnty., Tenn.*, 219 F.3d 555, 556 (6th Cir. 2000). The individual's parents requested that the police take their son to a hospital so that he could receive medical attention. *Ibid.* But when the son raised a machete at the officer, the officer shot and killed him. *Ibid.* The parents sued under the ADA, arguing that their son was denied medical assistance and killed because of his disability. *Id.* at 557–58. The court

upheld summary judgment for the officer, holding that "there is no doubt that their son was disabled under the ADA, [but] the Thompsons have failed to produce any evidence that . . . such denial [of medical services] was ***because of his disability.***" *Id*. at 558. The court further stated that "if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled." *Ibid.*

Similarly, Wittich was justified in using reasonable force to secure the scene. *See Tucker*, 539 F.3d at 536. Everson makes no allegations that Wittich's use of force was disproportionate to or otherwise unjustified by Everson's physical conduct. As a result, there is no room for a jury to find that Everson discriminated against Everson in any way.

B

Everson also fails to establish that Wittich intentionally discriminated against him, in violation of the ADA, by arresting him. Again, Everson's outward conduct required that Wittich restrain him. The issue is whether, by also proceeding to arrest Everson, Wittich intentionally discriminated against Everson because of his disability.

Everson was ultimately charged with assault ("[n]o person shall knowingly cause or attempt to cause physical harm to another . . . [or] recklessly cause serious physical harm . . . .") and with disorderly conduct ("[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by . . . threatening to harm persons or property, or . . . violent or turbulent behavior . . . ."). OHIO REV. CODE §§ 2903.13, 2917.11 (Baldwin's 2003). Everson does not dispute that his physical conduct—which included targeted verbal and physical attacks—was consistent with the violations for which he was charged, but instead argues that Wittich knew that he lacked the requisite *mens rea*,

and by proceeding to arrest him anyway, Wittich intentionally discriminated against him. *See* Appellant's Br. at 16–18. At bottom, Everson argues that Wittich knew that his conduct was caused by his disability, and by proceeding to arrest him for that conduct, Wittich intentionally discriminated against him because of his disability in violation of the ADA.

As support for this claim, Everson notes a line of cases outside of this Circuit that hold an arrestee can establish a claim under Title II by showing that the police officer knew of or should have known of his disability and nonetheless arrested him for lawful conduct caused by the disability. Appellant's Br. at 9–10 (citations omitted). We do not think these two unpublished cases from different districts support Everson's case. In *Jackson v. Inhabitants of Town of Sanford*, the police mistook the arrestee's speech impediment and instability for drug or alcohol impairment, and despite his explanation, arrested him. No. 94-12-P-H, 1994 WL 589617 (Sept. 23, 1994). The defendants, however, requested summary judgment only on the grounds that the ADA did not apply to arrests, not that they had not intentionally discriminated against the arrestee. And in *Lewis v. Truitt*, 960 F. Supp. 175 (D. Ind. 1997), the district court noted that the defendants had not cited any evidence to contradict the plaintiffs' argument that officers refused to communicate with him because he was deaf.

Although we accept, for purposes of summary judgment, that Everson's conduct was caused by his disability, there is insufficient evidence to support a conclusion that Wittich knew that Everson's conduct was caused by his disability or that Wittich acted because of—rather than in spite of—Everson's disability. The only facts in Everson's favor are that Wittich knew that Everson had recently suffered a seizure and that Wittich knew that Everson had recently been unconscious.

Everson alleges no facts that could support his bare conclusion that Wittich *knew* that Everson's seizure was ongoing during the relevant time period. Indeed, the evidence in the record points strongly in the other direction, that Wittich believed that Everson's seizure had concluded and that his conduct was, in fact, purposeful. When Wittich—who had no prior training in dealing with epilepsy—arrived at the scene, Everson was not randomly thrashing about, but was engaging in what appeared to be targeted physical and verbal attacks. Everson threatened to swing at officers and EMS professionals and actually did kick, swing, and spit on the officers and EMS professionals. And, significantly, Wittich was told by an EMS professional that Everson's conduct was *not* related to a seizure. Although we presume for the purposes of summary judgment that the EMS professional was mistaken, our inquiry is not whether Everson's attacks were purposeful, but whether Wittich knew that they were not purposeful. The evidence in the record compels the conclusion that he did not know, and the line of cases relied upon by Everson is therefore inapposite. And because Everson can not establish that Wittich knew that Everson's conduct was caused by his seizure, we hold that Everson can not establish that, by arresting him for that conduct, Wittich intentionally discriminated against him because of his disability.

C

Finally, Everson fails to sufficiently support his claim that Wittich intentionally discriminated against him because of his disability by initiating charges against him. Everson argues that, because Wittich had time between the arrest and filing charges to consider his lack of *mens rea*, Wittich discriminated against him by still proceeding to file charges. *See* Appellant's Br. at 17; Reply Br. at 3–4.

Significantly, Everson alleges no events that occurred between the time he was arrested and the time that Wittich filed charges—a time period during which Everson was fully conscious—that would distinguish the discrimination analysis from that of the arrest itself.

Even if the court accepts as true Everson's assertion that he heard an officer state that he will "think . . . up [a charge] and fax it down," and even if the court infers that Wittich was the speaker, Everson still cannot establish a genuine issue as to intentional disability discrimination. In light of the preceding events, the statement appears to indicate that Wittich believed that Everson had committed crimes, but was not certain of which crimes. Such uncertainty may raise issues as to the lawfulness of the arrest. *But see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that an arresting officer must have probable cause that the suspect had committed *a* crime, not necessarily the crime that the officer subjectively had in mind at the time of the arrest). It does not, however, provide any evidence of discriminatory intent that could support Everson's Title II claim.

V

It is not clear why Everson, after dismissing his § 1983 claims, has retained Leis as a defendant. Although he alleges that the County had no epilepsy-specific policies and training, Everson devotes his argument to Wittich's conduct and never specifically addresses Leis. Nor does Everson cite any cases or develop a legal argument as to how Leis might be liable under Title II of the ADA. Accordingly, Everson has waived any argument that the district court erred in granting summary judgment to Leis. *Garner v. Cuyahoga Juvenile Court*, 554 F.3d 624, 640–41 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument

in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) (holding that arguments are waived when an appellant "fail[s] to develop or support his argument with any legal authority").

VI

For the foregoing reasons, we AFFIRM the decision of the District Court.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because I believe that there is a genuine issue of material fact with respect to whether Wittich knew that Everson's conduct was related to his disability, I respectfully dissent. I would reverse the district judge's grant of summary judgment in favor of Wittich and allow Everson to proceed on his claim, under Title II of the Americans with Disabilities Act ("ADA"), that Wittich discriminated against him in arresting and charging him with assault and disorderly conduct. I write separately also to highlight the tension of this circuit's "solely because of" standard for intentional discrimination with the majority of our sister circuits.

## I.  WRONGFUL-ARREST THEORY AS A METHOD OF PROOF FOR INTENTIONAL DISCRIMINATION

I believe that Everson has demonstrated a claim under Title II of the ADA that Wittich intentionally discriminated against him because of his disability when Wittich arrested him and charged him with assault and disorderly conduct. Everson alleges his claim under the "wrongful-arrest theory," typically attributed to the case *Lewis v. Truitt*, 960 F. Supp. 175 (D. Ind. 1997). Under this theory, a plaintiff must show that "(1) he was disabled, (2) the defendants knew or should have known he was disabled, and (3) the defendants arrested him because of legal conduct related to his disability." *Id.* at 178. This test is "a specific application of the general standard." *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999) (discussing the wrongful-arrest theory but concluding that it was not applicable to the facts of that case because the defendant officer did not arrest the disabled decedent but rather used force on him while he was committing an assault related to his disability).

- 16 -

Here, it is undisputed that Everson is disabled and that Wittich knew Everson had a seizure-related medical condition. With respect to the third element, however, Wittich argues that to show that he discriminated against Everson because of his disability[2]—i.e., to show intentional discrimination—Everson must show that Wittich knew Everson's conduct was related to his disability. In other words, Wittich argues that under a modified wrongful-arrest theory for

---

[2]In his brief, Wittich argues that Everson was not arrested because of his disability but rather because he "was engaged in objectively verifiable misconduct." Appellee Br. at 8. Wittich further argues that the question of whether he violated the ADA hinges on whether he violated the constitutional protections for wrongful arrest. *Id.* at 16 ("[Everson's] actions clearly constituted probable cause that he had violated both statutes [for which he was arrested] and his arrest was therefore completed with probable cause. There was no constitutional violation by Deputy Wittich in effecting the arrest of Everson, and therefore no violation of the ADA.").

For his arguments, Wittich relies on the Fourth Circuit's decision in *Bates ex rel. Johns v. Chesterfield County, Virginia*, 216 F.3d 367 (4th Cir. 2000). In that case, officers were responding to a 911 call regarding a "suspicious suspect" and encountered an autistic teenager who became physically confrontational. *Id.* at 371. The officers did not know the teenager was autistic when the incident first escalated but were informed of his disability during the course of the incident. Despite knowing of the teenager's autism, the officers decided to charge him with assault. The Fourth Circuit conducted little analysis with respect to the plaintiff's ADA claim, relying instead on its analysis of the plaintiff's Fourth Amendment claim. *Id.* at 368 ("And as the officers complied with the Fourth Amendment in all respects, we are unable to discern any discrimination on account of disability."). Specifically, the court concluded that "Bates was not arrested because of his disability" but rather "because there was probable cause to believe that he assaulted a police officer"—in other words, "because of [his] objectively verifiable misconduct." *Id.* at 373.

I do not agree with the Fourth Circuit's view that the analysis of an ADA discrimination claim simply relies on a Fourth Amendment reasonableness analysis. At oral argument, when asked what would be intentional discrimination given that the officer could always rely on the involuntary actions caused by an epileptic seizure to say that he relied on "objectively verifiable misconduct," counsel for Wittich responded that an officer would have to know of the individual's disability *and* know that the individual's conduct was related to the disability.

*intentional* discrimination, the third element requires the plaintiff to show that the defendant arrested

him because of legal conduct *that the defendant knows is* related to the plaintiff's disability.[3]

The majority concludes that there is "insufficient" evidence that Wittich knew that Everson's

actions were related to his medical condition. Majority Op. at 12. However, Everson can prove that

Wittich had the requisite knowledge through circumstantial evidence, and Wittich's subjective

knowledge is a question of fact for the jury. *Cf. Farmer v. Brennan*, 511 U.S. 825, 842 (1994)

(concluding that, in the context of the Eighth Amendment deliberate-indifference standard,

---

[3]By modifying the third element to require that the officer know that the person's conduct is related to his disability, the theory would not cover plaintiffs in the scenario contemplated by the *Lewis* court in setting forth the wrongful-arrest theory and first expressed by the House Judiciary Committee when considering the ADA:

> "In order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid of seizures. Such discriminatory treatment based on disability can be avoided by proper training."

*Lewis*, 960 F. Supp. at 178 (quoting H.R. Rep. No. 101-485, pt. III, 101st Cong., 2d Sess. 50, *reprinted in* 1990 U.S.C.C.A.N. 473). The wrongful-arrest theory from *Lewis* contemplates an ADA violation when law-enforcement officers "*misperceive[] the effects of a disability as illegal conduct.*" *Gohier*, 186 F.3d at 1221 (emphasis added). We require, however, the plaintiff to "show that the discrimination was *intentionally* directed toward him or her in particular." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008), *cert. denied*, 130 S. Ct. 60 (2009). The wrongful-arrest theory nevertheless could be used as an indirect method of proof to show intentional discrimination if the plaintiff proved that the officer knew or should have known that the plaintiff's conduct is related to the disability.

I note also that we have stated that the failure to train officers on how to comply with the ADA is not intentional discrimination. *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005). Indeed, Wittich *benefits* in this case from his lack of training in how to recognize and handle situations involving a person having an epileptic seizure. Majority Op. at 13. Although some courts have applied a "reasonable-accommodation-during-arrest theory," Everson has not developed a failure-to-accommodate argument in this case. *See Gohier*, 186 F.3d at 1222 (recognizing theory but declining to decide whether it would apply to the facts of that case because the plaintiff did not pursue the theory on appeal).

"[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence"). Viewing the facts in the light most favorable to Everson, I think that Everson does present circumstantial evidence from which a reasonable jury could conclude that Wittich knew Everson's conduct was related to his seizure. Thus, there is a genuine issue of material fact remaining, and summary judgment is inappropriate.

To start, Wittich admits that he was responding to a call requesting that he help a person at the mall having a seizure; the dispatch call did not indicate that a crime or disturbance was occurring. R.51 (Wittich Dep. at 59–60); R.21-8 (Wittich Aff. at 1). Wittich also admits that, after he arrived on the scene but before anyone attempted to restrain Everson, he heard Everson say, "If you all didn't get away, I will have another seizure and start punching you guys." R. 51 (Wittich Dep. at 103). The majority concludes that this statement, "in the best light for Everson, put Wittich on notice that Everson was prone to having another seizure." Majority Op. at 6–7. But the majority ignores the second clause of Everson's statement: "I will have another seizure *and start punching you guys*." In the light most favorable for Everson, the statement put Wittich on notice not only that Everson was prone to having another seizure but also that the seizures come with punches—i.e., that his seizures are related to his violent behavior.

Furthermore, a prior panel of this court concluded that

[v]iewed in the light best to Everson, he had recovered from his seizure when he arrived at the squad car. There is nothing in the record to suggest that he was physically or verbally abusive at that time. Deputy Sheriff Wittich knew that Everson had suffered an epileptic seizure. It is a fair inference, then, that the deputy

> should have known that Everson's actions were made with, at best, a semi-conscious frame of mind.

*Everson v. Leis*, 556 F.3d 484, 499–500 (6th Cir. 2009); *see* R.20 (Everson Dep. at 27) (indicating that Everson came out of the seizure "[w]hen [he] was on the bed, basically when they were rolling [him] out"). To be sure, that Wittich *should have known* that Everson's conduct was not purposeful does not prove conclusively that Wittich *did in fact know*. But an inference can be drawn from the fact that he should have known, and that inference is circumstantial evidence of Wittich's actual knowledge. *Cf. Farmer*, 511 U.S. at 842–43 & n.8 ("[A] factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious."; "[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of." (alterations in original) (internal quotation marks omitted)).

The majority may be correct that the evidence in Wittich's favor—i.e., Wittich's testimony that, after Everson was restrained, Wittich asked an EMS paramedic whether Everson's conduct was related to the seizures and the paramedic told Wittich no, R.51 (Wittich Dep. at 42–43, 83–84)—is "strong[er]." Majority Op. at 13. But "[w]hen reviewing a district court's grant of summary judgment, [we] may not determine the credibility of witnesses or weigh the evidence."[4] *Reeves v.*

---

[4]For example, at oral argument, counsel for Everson raised the fact that evidence of the Wittich's conversation with the paramedic was first brought to light at Wittich's deposition; the conversation was not included in either the paramedic's affidavit or Wittich's charging documents. Such arguments regarding the credibility of Wittich's testimony are appropriate for the factfinder to consider.

*Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006). I believe that, viewing the evidence in the light most favorable to Everson, he has alleged circumstantial evidence that Wittich knew Everson's conduct was related to his medical condition. Therefore, I believe that there is a genuine issue of material fact with respect to whether Wittich intentionally discriminated against Everson when arresting him.

For the same reasons, I believe that there is also a disputed issue of material fact with respect to whether Wittich discriminated against Everson when charging him with assault and disorderly conduct. I also note that, at the summary judgment stage, we must accept as true "Everson's assertion that he heard an officer state that he will 'think . . . up [a charge] and fax it down,'" Majority Op. at 14 (quoting R. 20 (Everson Dep. at 28)), and we must construe the statement in Everson's favor. Instead, the majority conjectures what the statement "appears to indicate" from the perspective of Wittich. Majority Op. at 14. In the best light to Everson, this statement raises an inference that the officer who made the statement knew that he had no basis to suspect that Everson had committed a crime, and that inference is circumstantial evidence that supports a claim of intentional discrimination.

Accordingly, I would reverse the district court's grant of summary judgment in favor of Wittich on Everson's discrimination claim with respect to Wittich arresting and charging him with assault and disorderly conduct.

## II. INTENTIONAL DISCRIMINATION IN ON-THE-SCENE SITUATIONS

I agree with the majority that Everson has not established a claim that Wittich intentionally discriminated against him by approaching and restraining him. I would not extend the above-discussed indirect method of proof for demonstrating intentional discrimination with respect to arrests and filing charges to an officer's on-the-scene decisions in unexpected or exigent circumstances. *See Gohier*, 186 F.3d at 1217–18 (explaining why the wrongful-arrest theory would not apply when an officer uses force in response to threatening conduct, even if the conduct is related to the individual's disability). Whereas an officer's decision to arrest and charge an individual is focused on the individual's conduct and its lawfulness, an officer's decisions in on-the-scene situations involve broader concerns, including officer and public safety. *See Thompson v. Williamson Cnty.*, 219 F.3d 555, 558 (6th Cir. 2000) (concluding that "if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled"). Because of these additional considerations in an officer's on-the-scene decisions, the modified wrongful-arrest method of proof explained above is not sufficient to raise an inference of intentional discrimination from the fact that the officer knew the individual's actions were related to his disability. Therefore, I agree that Everson has not demonstrated that Wittich intentionally discriminated against him in approaching and restraining him.

I do not agree, however, with the majority's assertions that Wittich's actions in approaching and restraining Everson were necessarily compelled by the situation.[5] Majority Op. at 10 ("Wittich

---

[5]The majority also includes a short discussion of the reasonableness of the force that Wittich used while restraining and arresting Everson. Majority Op. at 11. This court previously dismissed Everson's excessive-force claim, *Everson*, 556 F.3d at 497–98, and, as I explained above, I believe

was expected to respond to this situation by securing the scene, which he did by restraining Everson."), 11 ("Everson's outward conduct required that Wittich restrain him."). Whereas restraining someone engaging in conduct similar to Everson's may be the appropriate response generally, there is evidence in the record indicating that officers should *not* approach or attempt to restrain a person having an epileptic attack. R. 51-1 (Epilepsy Foundation Doc.); R. 51-2 (OHIO REV. CODE ANN. § 2305.43). What law-enforcement procedures or practices were "required" in response to Everson's conduct or "expected" of Wittich in the situation may be relevant to a failure-to-accommodate claim, which Everson does not develop in this case.[6] What matters for Everson's claim of intentional discrimination is Wittich's statement that he believed Everson's conduct was threatening his safety and the safety of others, and Everson's failure to provide any evidence, direct

that whether Wittich discriminated against Everson under the ADA is a separate question from whether Wittich acted reasonably under the Fourth Amendment.

[6]This court has not explicitly decided whether a reasonable-accommodation claim under Title II is a viable claim separate from a disparate-treatment or disparate-impact type claim. *See Tucker*, 539 F.3d at 532–33, 535 (contemplating the accommodation requirement within the framework of an intentional discrimination claim but also stating the plaintiff must show intentional discrimination *or* failure to accommodate effectively); *Dillery*, 398 F.3d at 568 (recognizing that the plaintiff made a reasonable-accommodation argument but providing no further accommodation analysis); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 904 n.4 (6th Cir. 2004) (questioning, without deciding, whether it was appropriate to characterize a failure-to-accommodate claim as a form of disparate-impact discrimination); *Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (construing the plaintiff's argument to be relating to reasonable accommodation but not discussing the relationship of a reasonable-accommodation claim to an intentional-discrimination claim). *But see Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc) (distinguishing the failure to accommodate as an independent claim from disparate-treatment claims); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003) (collecting cases for the same), *cert. denied*, 541 U.S. 936 (2004).

or circumstantial, to discredit Wittich or otherwise suggest that Wittich acted because of Everson's disability.

### III. THE "SOLELY BECAUSE OF" STANDARD FOR INTENTIONAL DISCRIMINATION

I am also compelled to highlight at this time how this court's "solely because of" standard for plaintiffs to prove a prima facie case of intentional discrimination under Title II of the ADA conflicts with the majority of our sister circuits. Although I agree with the majority that the "solely" standard is not dispositive in this case, I think that our divergence from the majority of circuits on this standard is an issue that our en banc court should consider in an appropriate case.

The text of Title II states that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Our sister circuits have tracked this language when setting forth the elements of a prima facie case. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007) ("by reason of his disability"); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) ("by reason of the plaintiff's disability"); *Buchanan v. Maine*, 469 F.3d 158, 170–71 (1st Cir. 2006) ("by reason of the plaintiff's disability" (internal quotation marks omitted)); *Rodde v. Bonta*, 357 F.3d 988, 995 (9th Cir. 2004) ("by reason of his disability" (internal quotation marks omitted)); *Henrietta D.*, 331 F.3d at 272 ("by reason of plaintiffs' disabilities"); *Gohier*, 186 F.3d at 1219 ("by reason of the plaintiff's disability" (internal quotation marks omitted)); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) ("based upon disability"); *Lightbourn v. Cnty. of El*

*Paso*, 118 F.3d 421, 428 (5th Cir. 1997) ("by reason of their disability"), *cert. denied*, 522 U.S. 1052 (1998).

But the Fourth Circuit, in a decision on which this court relied in *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003), has stated that a Title II plaintiff must establish that the discrimination was "solely on the basis of the disability." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). In both *Jones* and *Doe*, the plaintiffs brought claims under Title II of the ADA and under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the courts applied the sole-motivation standard to both claims. *Jones*, 341 F.3d at 477 & n.3; *Doe*, 50 F.3d at 1264–65 & n.9. The text of the Rehabilitation Act, however, includes the word "solely," whereas the ADA does not. *Compare* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, *solely* by reason of her or his disability, . . . be subjected to discrimination . . . ." (emphasis added)), *with* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, . . . be subjected to discrimination . . . ."). Prior to *Jones*, this court recognized that, although we frequently apply the same analysis to claims under both statutes, this textual difference may be an instance in which the analyses diverge. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (en banc); *see also McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073–77 (11th Cir. 1996) (analyzing the statutory language, legislative history, and case law to conclude that it is improper to import "solely" from the Rehabilitation Act into the ADA ).

But in *Jones*, we summarily concluded that "[f]or purposes of [that] case, there are no relevant differences between Title II of the ADA and Section 504 of the Rehabilitation Act," 341 F.3d at 477 n.3, and for the first time imported the sole-motivation standard from the Rehabilitation

Act into the third element of the prima facie case for Title II ADA claims with no analysis other than citations to *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (setting forth the prima facie case for a Title II ADA claim but without using the word "solely"), *Burns v. City of Columbus*, 91 F.3d 836, 841 (6th Cir. 1996) (a Rehabilitation Act case), and *Doe*, 50 F.3d 1261).[7] *Jones*, 341 F.3d at 477. Although elsewhere in the *Jones* opinion we describe the third element without the word "solely"—"whether [the plaintiff] was excluded from participation in or denied a benefit on the basis of her disability," *id.* at 477 n.4 (quoting *Henrietta D.*, 331 F.3d at 276–78)—the sole-motivation standard has become firmly entrenched in this court's binding Title II precedent.[8] *See Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008), *cert. denied*, 130 S. Ct.

---

[7]*Jones* was not the first time that we summarily imported the sole-motivation standard from the Rehabilitation Act into the ADA. In *Maddox v. University of Tennessee*, 62 F.3d 843, 846 & n.2 (6th Cir. 1995), we added the Rehabilitation Act's "solely" language to the "because of" standard under Title I of the ADA. We have since recognized that our sole-motivation standard in the Title I area is in tension with the majority of our sister circuits. *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 363–64 n.2 (6th Cir.) (collecting cases from other circuits), *cert. denied*, 552 U.S. 826 (2007); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 454 (6th Cir. 2004) (recognizing that the sole-motivation standard is still the law of this circuit, even though it is in tension with other circuits); *see also Pinkerton v. Spellings*, 529 F.3d 513, 518 & n.30 (5th Cir. 2008) (collecting cases reaching "the conclusion that the ADA causation standard does not require a showing of sole cause" but noting that our court has concluded otherwise). *But see Todd v. City of Cincinnati*, 436 F.3d 635, 637–38 (6th Cir. 2006) (discussing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996), and attempting to limit application of the sole-motivation standard).

[8]Some circuits have interpreted the "by reason of" language of Title II to establish a "motiving factor" standard. *See, e.g.*, *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1065–66 (9th Cir. 2005); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 579 (2d Cir. 2003); *cf. Macy*, 484 F.3d at 363–64 n.2 (noting cases from other circuits that apply a "motivating factor" standard to claims under Title I of the ADA). It is unclear whether a mixed-motive standard is proper under the ADA in light of the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, --- U.S. ---, 129 S. Ct. 2343, 2352 (2009), which held that mixed-motive analysis does not apply in the context of the Age Discrimination in Employment Act of 1967 ("ADEA"). *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010) (extending *Gross* to the ADA); *see also Bolmer v.*

60 (2009); *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (quoting *Jones*, 341 F.3d at 477).

Because our "solely because of" standard is in tension with the majority of circuits, I believe that our en banc court should consider the continued validity of our decisions applying this standard in an appropriate case.

## IV.  CONCLUSION

I respectfully dissent and would reverse the district judge's grant of summary judgment in favor of Wittich with respect to Everson's claim that Wittich intentionally discriminated against him by arresting and charging him with assault and disorderly conduct for involuntary conduct caused by his disability.  Because I believe that a genuine issue of material fact remains with respect to whether Wittich knew that Everson's conduct was related to his disability, I would allow Everson to proceed on his ADA claim against Wittich.

---

*Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010) (recognizing open question regarding *Gross*'s extension to ADA claims); *Crouch v. J C Penney Corp.*, 337 F. App'x 399, 402 n.1 (5th Cir. 2009) (unpublished decision) (same).  Regardless, even the "but-for" causal standard does not require disability to be the sole motivating factor.  *See Goostree v. Tennessee*, 796 F.2d 854, 863 (6th Cir. 1986) (distinguishing sole-motivation standard from "but for" standard) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n.10 (1976)), *cert. denied*, 480 U.S. 918 (1987); *see also Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277–78 (10th Cir. 2010) (same); *cf. Gross*, 129 S. Ct. at 2350 (describing a "but-for" cause as one that "had a determinative influence on the outcome" (emphasis and internal quotation marks omitted)).