BOGGS, Circuit Judge.
Shortly after suffering an epileptic seizure at a mall, Kevin Everson was restrained, placed under arrest, and charged with criminal offenses. Those charges were ultimately dropped. In district court, Everson brought claims against defendants under Title II of the Americans with Disabilities Act (“ADA”). Everson alleges that defendants intentionally discriminated against him in the manner they responded to his seizure. The district court granted summary judgment in favor of defendants, and we affirm.
I
On April 19, 2003, Everson experienced an epileptic seizure in the bathroom at Northgate Mall in Hamilton County, Ohio. Appellant’s Br. at 3. Shortly thereafter, Hamilton County Deputy Sheriff Albert Wittich received a call requesting assistance for a person at the mall having a seizure. When Wittich arrived, two EMS employees and two other deputies, re *773 sponding to the same call, were already at the scene.
Everson remembers that he was approached by individuals in uniform after exiting the bathroom, and that he asked them whether he could sit down. Everson also remembers being on the ground, although he otherwise lacks any recollection of his interaction with these uniformed individuals until after his episode ended with him restrained on a cot. Everson v. Leis, 556 F.3d 484, 489-90 (6th Cir.2009). This loss of memory is typical for Everson, who stated that he can remember what happens before and after — but not what happens during — a seizure. Id. at 489.
Because Everson has no further memories of the interaction at issue, the defendants’ version of events is undisputed and should be accepted for the court’s purposes here. Wysong v. City of Heath, 260 Fed.Appx. 848, 856 (6th Cir.2008) (deciding summary judgment based on officer’s version of events when plaintiff, due to disability, could not recall what happened) (citing Wertish v. Krueger, 433 F.3d 1062 (8th Cir.2006)). This court summarized defendants’ version of events as follows:
Everson threatened to swing at mall security staff and local EMS. He kicked and swung at individuals as they approached him. When Deputy Wittich attempted to retrieve [Everson’s] identification, Everson became violent and kicked the deputy. After being placed on the ground, Everson continued to kick and fight. When an EMS worker tried to obtain a blood sugar reading, Everson pushed the worker away.
Everson v. Leis, 556 F.3d at 489-90. The only additional discovery following Ever-son’s first appeal — Deputy Wittich’s deposition — confirms these events.
Putting an end to this ruckus, Wittich restrained Everson, placed him on an EMS cot, and transported him outside the mall. Appellees’ Br. at 6. Wittich placed Everson under arrest and subsequently prepared a criminal complaint, charging him with both assault and disorderly conduct under the Ohio Revised Code. Ever-son claims that he experiences involuntary muscle movements during and after seizures, and that all of his aggressive actions were caused by his seizure. Accordingly, the charges were dismissed when Ever-son’s attorney provided the prosecutor with medical documentation of Everson’s disability. Appellant’s Br. at 6.
Nearly two years later, on February 11, 2005, Everson filed claims against Sheriff Simon Leis, Wittich, a John Doe Deputy, Northgate Mall, and John Doe employees of the mall. In his complaint, Everson asserted multiple claims under 42 U.S.C. §§ 1983 and 1985, an equal protection claim under the Fourteenth Amendment, an emotional distress claim under Ohio law, and a claim under Title II of the ADA.
On August 1, 2006, Leis and Wittich filed a motion for summary judgment. Everson’s counsel did not reply to the motion and ultimately withdrew for personal reasons. Everson’s new counsel requested that the district court reopen discovery, and the court granted the request on October 11, 2007. Leis and Wittich filed an interlocutory appeal of the order to reopen discovery, and in Everson v. Leis, this court decided that appeal, holding that Leis and Wittich were entitled to qualified immunity on all §§ 1983 and 1985 claims against them in their individual capacities. 556 F.3d at 491-92. Because Leis and Wittich had not moved for qualified immunity from the ADA claim against them in their individual capacities, the court did not reach the merits of the ADA claim and remanded to the district court for further proceedings. Id. at 501.
Everson voluntarily dismissed his equal protection and emotional distress claims, choosing to proceed with only his Title II *774 claim against Leis and Wittich in their official capacities. On October 6, 2009, the district court granted summary judgment to the defendants on Everson’s sole remaining claim. The court assumed for purposes of summary judgment that Ever-son’s actions were involuntary and caused by his epilepsy, but nonetheless concluded that any discrimination was unintentional and thus not actionable under the ADA.
Everson filed this timely appeal of the district court’s order of summary judgment, and this court has appellate jurisdiction under 28 U.S.C. § 1291.
II
This court reviews orders granting summary judgment de novo. Havensure, L.L.C. v. Prudential Ins. Co. of America, 595 F.3d 312, 315 (6th Cir.2010). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only where “the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.”
A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Havensure, 595 F.3d at 315 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party has the burden of establishing a lack of a genuine issue of material fact, and if the moving party meets this burden, the nonmoving party must set forth specific facts indicating the existence of a genuine issue. Univ. of Pittsburgh v. Townsend, 542 F.3d 513, 522 (6th Cir.2008).
Finally, when reviewing the record for a genuine issue of material fact, the court must draw all reasonable inferences in the light most favorable to the non-moving party. Richland Bookmart, Inc. v. Knox Cnty., Tenn., 555 F.3d 512, 520 (6th Cir.2009) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
Title II of the ADA provides: “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132. To establish a claim of discrimination under Title II, a plaintiff must prove that: “(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely [1] because of her disability.” Dillery v. City of Sandusky, 398 F.3d 562, 567 (6th Cir.2005) (citing Jones v. City of Monroe, 341 F.3d 474, 477 (6th Cir.2003)). The plaintiff must also prove that the disability discrimination was intentional as it relates to the service, activity, or program. Tucker v. Tennessee, 539 F.3d 526, 535 (6th Cir.2008) (“[E]ach [plaintiff] must show that he or she was intentionally discriminated against solely because of his or her disability in the context of that public service, activity, or program.... ”).
Defendants argue that Title II does not apply to arrests. Appellees’ Br. at 8. While whether Title II applies to arrests is an open question in this Circuit, we need not decide it here. Tucker, 539 F.3d at 534-35 (noting the open question and assuming, without deciding, the applicability *775 of Title II to arrests in disposing of the case for a lack of intentional discrimination); Scozzari v. City of Clare, 723 F.Supp.2d 945, 971 (E.D.Mich.2010) (noting that the Sixth Circuit has not decided whether Title II applies to arrests). Because we hold that Everson fails to establish a genuine issue of material fact as to whether defendants intentionally discriminated against him because of his disability, we affirm the grant of summary judgment in favor of defendants without deciding whether Title II applies to arrests. Tucker, 539 F.3d at 534-35; Shultz v. Carlisle Police Dep’t, 706 F.Supp.2d 613, 626 (M.D.Pa.2010) (noting the lack of Third Circuit guidance on the same issue and disposing of an ADA claim for a lack of intent).
Ill
Because we must draw all inferences in the light most favorable to Everson, the nonmoving party, we consider the following facts and inferences for the purpose of determining whether, as the district court found below, there is “no genuine issue as to any material fact and [defendants are] entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); Richland Bookmart, 555 F.3d at 520.
Everson has epilepsy, and his epilepsy caused all of his behavior during his interaction with defendants.
From the call that dispatched him to the scene, Wittich knew that Everson had recently suffered a seizure and had been unconscious. And at the time Wittich entered the scene, Wittich knew that Ever-son was acting in a semi-conscious state of mind. Everson v. Leis, 556 F.3d at 499 (“It is a fair inference, then, that the deputy should have known that Everson’s actions were made with, at best, a semiconscious frame of mind.”).
When Wittich arrived at the scene, Ev-erson threatened to “have another seizure and start punching you guys,” which in the best light for Everson, put Wittich on notice that Everson was prone to having another seizure. Appellant’s Br. at 5. Ev-erson also acknowledges that he kicked Wittich, albeit involuntarily. Everson otherwise has no recollection of the disputed interaction in the mall, and he accordingly does not dispute the descriptions of the interaction offered in the affidavits of those at the scene, which should be accepted for purposes of determining whether summary judgment is appropriate. Wysong, 260 Fed.Appx. at 856.
Brandon Goff, a mall security guard, averred that Everson was “threatening to swing at uniform officers and the [EMS]” and that Everson “kicked the uniform officers and attempted to swing at another uniform officer,” continuing to “kick and fight” after being taken to the ground. Kellie Murphy, an EMS employee, averred that Everson “kicked and swung at the uniform officers and pushed me away when I attempted to get a blood sugar reading” and that Everson “continued to kick, fight and attempt to spit on us” after being taken to the ground. And Wittich similarly averred that Everson was “violent and started kicking” and “continued to kick and fight” after being taken to the ground.
Wittich testified that, when he first arrived at the scene, he asked an EMS paramedic whether Everson’s behavior was “all part of his medical condition[,]” and that the paramedic responded, “[n]o, he’s just acting like a fucking asshole.” The district court did not consider this testimony in its summary judgment analysis. Everson characterizes the testimony as hearsay, but the district did not use that term, and appropriately so, as the statement was not hearsay to the extent that it is used to demonstrate Wittich’s state of mind as opposed to the truth of the matter asserted *776 therein, i.e., that Everson was acting purposefully. Fed.R.Evid. 801(c); Hagan v. Warner/Elektra/Atlantic Corp., 92 Fed.Appx. 264, 267-68 (6th Cir.2004) (holding that, in granting summary judgment for defendant employer in a discrimination suit, the district court properly considered defendant’s testimony regarding statements made by other employees for the purpose of determining whether the employer had discriminatory intent) (citing United States v. Horton, 847 F.2d 313, 324 (6th Cir.1988)). Although the district court opted not to consider the statement for its impact on Everson’s state of mind, we may do so in deciding the issue de novo. Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 306-07 (6th Cir.2008) (reversing order for summary judgment based on evidence in record that the district court did not consider); see Jibson v. Mich. Educ. Ass’n-NEA, 30 F.3d 723, 729 (6th Cir.1994) (holding that this court reviews a district court’s grant of summary judgment based on “a de novo review of the evidence in the entire record.”).
After restraining and removing Everson from the mall, Wittich had time to consider whether probable cause existed to charge Everson with a crime, and when he made that determination, Everson was no longer abusive. Everson, 556 F.3d at 499 (“Viewed in the light best to Everson, he had recovered from his seizure when he arrived at the squad car.... There is nothing in the record to suggest that he was ... abusive at that time.”).
Everson also heard an officer, whom he does not identify as Wittich, suggest that he did not know what crime Everson had committed. Specifically, Everson claims that, after an unidentified individual asked the unidentified officer what Everson was going to be charged with, the officer replied, “I’ll think something up and fax it down.”
Finally, Wittich received no training on accommodating people with epilepsy.
IV
We apply the three-step test described in Dillery and Tucker to determine whether the district court erred in granting summary judgment for Wittich. Tucker, 539 F.3d at 532 (“to establish a prima facie case of discrimination under the ADA, a plaintiff must prove” the Dillery elements). Thus, in order to defeat a motion for summary judgment in his Title II claim against Wittich, Everson must prove that: (1) he has a disability; (2) he otherwise qualifies for the service, program, or activity; and (3) Wittich intentionally discriminated against him solely because of his disability. Dillery, 398 F.3d at 567; Tucker, 539 F.3d at 535.
First, Everson has alleged facts that indicate that he has a disability. Second, we assume, without deciding, that Everson also qualifies for the service, program, or activity; i.e., that Title II applies to arrests. The remaining question is whether Wittich intentionally discriminated against Everson because of his disability. Ever-son alleges that Wittich discriminated against him, in violation of Title II, by: (1) restraining him, (2) arresting him, and (3) charging him with assault and disorderly conduct. We consider each of these claims in turn.
A
Everson fails to sufficiently support his claim that Wittich intentionally discriminated against him based on his disability by approaching and restraining him.
In Tucker, this court ruled that “[wjhere ... officers are presented with exigent or unexpected circumstances, it would be unreasonable to require certain accommoda *777 tions be made in light of the overriding public safety concerns ... we rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter.” 539 F.3d at 536. And in Dillery, this court held that, when police officers properly discharged their duties to maintain the safety of others, their stopping a disabled woman for conduct related to her disability did not constitute intentional discrimination. 398 F.3d at 568.
When Wittich arrived on the scene, Ev-erson presented a threat to those around him. Everson v. Leis, 556 F.3d at 489-90. Everson does not contest that Wittich was called to assist a person who was having a seizure. Nor does Everson contest that he was threatening security and medical professionals on the scene. Wittich was expected to respond to this situation by securing the scene, which he did by restraining Everson. See Tucker, 539 F.3d at 535; see also Dillery, 398 F.3d at 568. Everson alleges no facts that reasonably suggest that Wittich, in acting to protect himself and others, acted to discriminate against Everson’s disability. Everson argues that Wittich violated an Ohio statute by reaching for his wallet, but Wittich’s alleged violation of a state law — which does not relate to intentional discrimination — does not speak to the issue of whether he intentionally discriminated against Everson. See Ohio Rev.Code § 2305.43 (“[A] law enforcement officer may not search for an ... identification card in a manner ... that would appear to a reasonable person in the circumstances to cause an unreasonable risk of worsening the disabled person’s condition.”).
In a similar case in this circuit, police were contacted to assist with a mentally disabled individual who was threatening his family with a machete. Thompson v. Williamson Cnty., Tenn., 219 F.3d 555, 556 (6th Cir.2000). The individual’s parents requested that the police take their son to a hospital so that he could receive medical attention. Ibid. But when the son raised a machete at the officer, the officer shot and killed him. Ibid. The parents sued under the ADA, arguing that their son was denied medical assistance and killed because of his disability. Id. at 557-58. The court upheld summary judgment for the officer, holding that “there is no doubt that their son was disabled under the ADA, [but] the Thompsons have failed to produce any evidence that ... such denial [of medical services] was because of his disability.” Id. at 558. The court further stated that “if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled.” Ibid.
Similarly, Wittich was justified in using reasonable force to secure the scene. See Tucker, 539 F.3d at 536. Everson makes no allegations that Wittich’s use of force was disproportionate to or otherwise unjustified by Everson’s physical conduct. As a result, there is no room for a jury to find that Everson discriminated against Everson in any way.
B
Everson also fails to establish that Wittich intentionally discriminated against him, in violation of the ADA, by arresting him. Again, Everson’s outward conduct required that Wittich restrain him. The issue is whether, by also proceeding to arrest Everson, Wittich intentionally discriminated against Everson because of his disability.
Everson was ultimately charged with assault (“[n]o person shall knowingly cause or attempt to cause physical harm to another ... [or] recklessly cause serious physical harm ....”) and with disorderly conduct (“[n]o person shall recklessly *778 cause inconvenience, annoyance, or alarm to another by ... threatening to harm persons or property, or ... violent or turbulent behavior....”). Ohio Rev.Code §§ 2903.13, 2917.11 (Baldwin’s 2003). Ev-erson does not dispute that his physical conduct — which included targeted verbal and physical attacks — was consistent with the violations for which he was charged, but instead argues that Wittich knew that he lacked the requisite mens rea, and by proceeding to arrest him anyway, Wittich intentionally discriminated against him. See Appellant’s Br. at 16-18. At bottom, Everson argues that Wittich knew that his conduct was caused by his disability, and by proceeding to arrest him for that conduct, Wittich intentionally discriminated against him because of his disability in violation of the ADA.
As support for this claim, Everson notes a line of cases outside of this Circuit that hold an arrestee can establish a claim under Title II by showing that the police officer knew of or should have known of his disability and nonetheless arrested him for lawful conduct caused by the disability. Appellant’s Br. at 9-10 (citations omitted). We do not think these two unpublished cases from different districts support Ev-erson’s case. In Jackson v. Inhabitants of Town of Sanford, the police mistook the arrestee’s speech impediment and instability for drug or alcohol impairment, and despite his explanation, arrested him. No. 94-12-P-H, 1994 WL 589617 (Sept. 23, 1994). The defendants, however, requested summary judgment only on the grounds that the ADA did not apply to arrests, not that they had not intentionally discriminated against the arrestee. And in Lewis v. Truitt, 960 F.Supp. 175 (D.Ind.1997), the district court noted that the defendants had not cited any evidence to contradict the plaintiffs’ argument that officers refused to communicate with him because he was deaf.
Although we accept, for purposes of summary judgment, that Everson’s conduct was caused by his disability, there is insufficient evidence to support a conclusion that Wittich knew that Everson’s conduct was caused by his disability or that Wittich acted because of — rather than in spite of — Everson’s disability. The only facts in Everson’s favor are that Wittich knew that Everson had recently suffered a seizure and that Wittich knew that Ever-son had recently been unconscious. Ever-son alleges no facts that could support his bare conclusion that Wittich knew that Ev-erson’s seizure was ongoing during the relevant time period. Indeed, the evidence in the record points strongly in the other direction, that Wittich believed that Everson’s seizure had concluded and that his conduct was, in fact, purposeful. When Wittich — who had no prior training in dealing with epilepsy — arrived at the scene, Everson was not randomly thrashing about, but was engaging in what appeared to be targeted physical and verbal attacks. Everson threatened to swing at officers and EMS professionals and actually did kick, swing, and spit on the officers and EMS professionals. And, significantly, Wittich was told by an EMS professional that Everson’s conduct was not related to a seizure. Although we presume for the purposes of summary judgment that the EMS professional was mistaken, our inquiry is not whether Everson’s attacks were purposeful, but whether Wittich knew that they were not purposeful. The evidence in the record compels the conclusion that he did not know, and the line of cases relied upon by Everson is therefore inapposite. And because Everson can not establish that Wittich knew that Everson’s conduct was caused by his seizure, we hold that Everson can not establish that, by arresting him for that conduct, Wittich intentionally discriminated against him because of his disability.
*779 c
Finally, Everson fails to sufficiently support his claim that Wittich intentionally discriminated against him because of his disability by initiating charges against him. Everson argues that, because Wittich had time between the arrest and filing charges to consider his lack of mens rea, Wittich discriminated against him by still proceeding to file charges. See Appellant’s Br. at 17; Reply Br. at 3-4.
Significantly, Everson alleges no events that occurred between the time he was arrested and the time that Wittich filed charges — a time period during which Ev-erson was fully conscious — that would distinguish the discrimination analysis from that of the arrest itself.
Even if the court accepts as true Ever-son’s assertion that he heard an officer state that he will “think ... up [a charge] and fax it down,” and even if the court infers that Wittich was the speaker, Ever-son still cannot establish a genuine issue as to intentional disability discrimination. In light of the preceding events, the statement appears to indicate that Wittich believed that Everson had committed crimes, but was not certain of which crimes. Such uncertainty may raise issues as to the lawfulness of the arrest. But see Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (holding that an arresting officer must have probable cause that the suspect had committed a crime, not necessarily the crime that the officer subjectively had in mind at the time of the arrest). It does not, however, provide any evidence of discriminatory intent that could support Everson’s Title II claim.
V
It is not clear why Everson, after dismissing his § 1983 claims, has retained Leis as a defendant. Although he alleges that the County had no epilepsy-specific policies and training, Everson devotes his argument to Wittich’s conduct and never specifically addresses Leis. Nor does Ever-son cite any cases or develop a legal argument as to how Leis might be liable under Title II of the ADA. Accordingly, Everson has waived any argument that the district court erred in granting summary judgment to Leis. Garner v. Cuyahoga County Juvenile Court, 554 F.3d 624, 640-41 (6th Cir.2009) (“Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.”) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); United States v. Williams, 544 F.3d 683, 690 (6th Cir.2008) (holding that arguments are waived when an appellant “fail[s] to develop or support his argument with any legal authority”).
VI
For the foregoing reasons, we AFFIRM the decision of the District Court.

. Although "solely'' is part of this circuit's test for disability discrimination, we do not believe that it does any work in this case.